# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**CITY OF SANTA FE,**

    Plaintiff-Appellant,

v.                                                 **NO. 28,944**

**TRAVELERS CASUALTY
& SURETY COMPANY,**

    Defendant-Appellee,

and

**LONE MOUNTAIN
CONTRACTING, INC.,**

    Defendant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Daniel A. Sanchez, District Judge**

Sheehan, Sheehan & Stelzner, P.A.
Timothy M. Sheehan
Jaime L. Dawes
Albuquerque, NM

for Appellant

Keleher & McLeod, P.A.
Ann M. Conway
Deron B. Knoner
Albuquerque, NM

for Appellee

**MEMORANDUM OPINION**

**CASTILLO, Judge.**

The City of Santa Fe hired Lone Mountain Contracting, Inc. to repair a water tank. As part of that arrangement Lone Mountain was required to post a performance bond, which was posted by Travelers Casualty & Surety Co. At some point, the City determined that the work had not been up to standard. [RP 1-5; DS 2-4] The bond contains a two-year time to sue provision, [RP 7, ¶ 9] but the statute of limitations for claims under bonds is six years. *See* NMSA 1978, § 37-1-3 (1975).

The City filed this declaratory judgment action seeking to establish that the longer statute of limitation applied. [RP 1-5] The court granted summary judgment determining that the two-year provision in the contract applies, and the City appeals. Our notice proposed to affirm. The City has filed a timely memorandum in opposition, and Defendant Travelers has filed a timely memorandum in support. We have considered the arguments in the City's memorandum, but we are not persuaded. We affirm.

**DISCUSSION**

"Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. . . . We review these legal questions de novo." *Self v. United Parcel Serv., Inc.*, 1998-NMSC-046,

¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted).

**A.      Public Policy**

The City argues that public policy precludes reliance on a time-to-sue provision that sets a shorter time frame than the statute of limitations.  The City has recognized that some of our appellate cases have refused to enforce a time-to-sue provision, but others have enforced such an agreement.  [DS 7-8] Our notice proposed to hold that this case is governed by *State ex rel. Udall v. Colonial Penn Ins. Co.*, 112 N.M. 123, 812 P.2d 777 (1991).  That case involved a performance bond with a three-year time-to-sue provision and the State's argument that it should not be applied because it would violate public policy.  The public policy advanced there, as here, was that the protection of the public fisc required that the longer, statutory limitations period be applied.  *See id.* at 125-26, 812 P.2d at 779-80.  Our Supreme Court rejected that argument, reasoning that parties are free to contract, and having clearly expressed a time-to-sue provision, will be bound by it. *See id.*  We believe we are bound to follow *Udall.  See Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) (stating that this Court must follow precedents of our Supreme Court).  Because we have New Mexico authority on point, we are not inclined to follow the Minnesota and Maryland cases cited in its docketing statement [DS 8] holding that a time limitation in a bond is against public policy.

3

We recognize that *Sandoval v. Valdez*, 91 N.M. 705, 580 P.2d 131 (Ct. App. 1978), declined to enforce a one-year time-to-sue provision in an auto insurance policy because it violated public policy. *Sandoval* involved a one-year limitation and a public policy of critical importance: uninsured motorist coverage. *See id.* at 708, 580 P.2d at 134. By contrast, here there is a two-year time-to-sue provision, no claim that the contract was one of adhesion [Tr. 13] [Note: Transcript references are to the partial transcript attached to the City's docketing statement], and the public policy claim is based on potential injury to the public fisc. That, however, has already been rejected as a sufficiently weighty interest to create a public policy exception. *See Udall*, 112 N.M. at 125-26, 812 P.2d at 779-80. The City contends that this case is more like *Sandoval*, [MIO 3, 9-10], but we are not persuaded. *Sandoval* deals with a short limitations period in an automobile insurance contract made between parties with unequal bargaining power. By contrast, *Udall* deals with whether a governmental entity is bound by a limitations period in a performance bond. *Udall* is more on point.

The City argued below, and argues in its memorandum in opposition, that it did not "execute or enter into the contract containing the two-year limitations period," and "is not a party to the performance bond." [RP 146, MIO 5-6] We disagree. The City entered into the contract with the contractor, required a bond, and the bond itself states

4

that Travelers and the contractor "bind themselves" to the City, "for the performance of the Construction Contract, which is incorporated herein by reference." [RP 150, ¶ 1] The bond was required by statute, and the statute requiring a bond for public projects states that the bond shall be delivered to the state agency or local public body and "shall become binding on the parties upon the execution of the contract." *See* NMSA 1978, § 13-4-18(A) (1987). Consequently, under the language of the contract, and under the relevant statute, the City is a party to and is bound by the bond.

In its memorandum, the City argues that this case is distinguishable from *Udall* because the City did not negotiate the terms of the bond. [MIO 5] We are not persuaded. *Udall* considered the same argument and rejected it. *See Udall*, 112 N.M. at 127, 812 P.2d at 781 ("Even if, as the state claims, it did not negotiate actively over the [bond] provisions, the limitations on the right to sue were part of the agreement and represented part of the consideration."). Therefore, whether the City actively negotiated the terms of the bond is not the critical fact. In our view, the dispositive facts are that the City had the opportunity to negotiate and ultimately entered into the contract. The City does not dispute that it had the opportunity to review the bond and that it expressed no disagreement with it. The comments of the City's counsel even suggest that it was reviewed by someone at the City who just did not catch the shorter limitations period (or perhaps that the contract and bond language was not reviewed

at all). [Tr. 13: "The City of Santa Fe is made up of a lot of people who do the best every day to perform city services . . . . "] Because the City had the opportunity to review the bond and ultimately entered into the contract, which included the bond, the City is bound by the terms of the bond.

Additionally, our notice proposed to hold that, since the City claims that it is entitled to recover against the bond, it is incongruous to argue that it is not a party to it and is not bound in any way by the bond. In its memorandum, the City argues that it is not incongruous. It argues that it is a third-party beneficiary and can enforce bond provisions as such without necessarily being a party to the bond. [MIO 6] We disagree. In support of this argument the City cites case law about third-party beneficiaries in general. However, these cases do not involve a public entity as a third-party beneficiary to a bond. More importantly, as we have discussed, the City was bound as a party by the terms of bond. The City is not a third-party beneficiary.

Finally, the City argues that statutory bonds are for the benefit and protection of the public and that the bond obligations are strictly construed in favor of the beneficiaries of the bonds. [DS 7] We accept that as a general proposition, but neither the general purpose nor the rule requiring construction in favor of the beneficiary overrides *Udall*, or the plain language of the parties' contract.

For all of these reasons, we hold that the bond is part of the City's construction

contract, and the City is bound by that contract. In our view, the Supreme Court's opinion in *Udall* is dispositive. We believe the City's arguments that *Udall* is distinguishable are more appropriately addressed to our Supreme Court. *See Alexander*, 84 N.M. at 718, 507 P.2d at 779 (stating that this Court must follow precedents of our Supreme Court). We, however, are not persuaded by the City's attempt to distinguish *Udall.*

**B.      Immaterial Factual Issues**

The City also contends that the court's comments, made during the summary judgment hearing, indicate that there are disputed issues of material fact and, therefore, summary judgment is inappropriate. [DS 6, 8-9; MIO 10-15] These comments consist of the court asking if the City had to approve the bid package including the bond form [Tr. 8] and counsel for the City asserting that he did not know if the City had reviewed an executed copy of the bond, or he did not think that the City had [Tr. 12, MIO 11], a question about the premium paid [Tr. 13], and the court's ruling. [Tr. 20-21]

These comments do not create a genuine issue of material fact. These comments were general questions about the bid process or indicated the court's thought process in resolving the case. The lone comment from the City's counsel about whether the "executed" copy of the bond was reviewed by someone at the City

does not raise an issue of fact because the speaker does not appear to know what happened or to have any personal knowledge. Moreover, as we have discussed, the point is not whether the bond was reviewed, but whether the City had the opportunity to review the contract and whether the City was bound by the contract. As we have discussed under *Udall*, once the contract was executed and the bond was delivered, the City was bound by the bond's two-year limitation on lawsuits.

The asserted factual issues surrounding the making of the contract, even if somewhat disputed or undeveloped, were not material. *See Oschwald v. Christie*, 95 N.M. 251, 253, 620 P.2d 1276, 1278 (1980) (stating that it is not enough that there are factual issues because issues must be material; immaterial facts create no triable issue). The facts that the City attempts to create are nothing more than gloss on the obvious facts that the City made and signed the contract. Beyond that, the facts underlying that process or decision, including whether someone from the City was not as careful in reviewing the contract as he or she should have been, do not appear to be relevant or material. *See id.*

In its memorandum the City disagrees with this reasoning. It argues that it is not an "obvious fact" that the City "made and signed the contract." [MIO 13] We are not persuaded. Again, the City relies on the contract and bond when it is to its advantage—and it brought this declaratory action so that it could do so. The City's

contract with the contractor required a bond by law, the City had the opportunity to review the bond, and the City obtained its bond. The contract was made and the project was completed. Contrary to the City's argument, the City entered into the contract. Therefore, the facts underlying the process leading up to the execution of the contract, on which the City now relies in an attempt to create a disputed issue, do not establish a genuine issue of material fact.

For all of these reasons, we affirm.

**IT IS SO ORDERED.**

_____

**CELIA FOY CASTILLO, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Chief Judge**

_____

**JAMES J. WECHSLER, Judge**